

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CCC: APW/JK
F. #2021R00258

*610 Federal Plaza*
*Central Islip, New York 11722*

May 18, 2023

<u>By ECF</u>

The Honorable Joanna Seybert
United States District Judge
United States District Court
Eastern District of New York
1030 Federal Plaza
Central Islip, New York 11722

    Re: United States v. Willie Junior Maxwell II
      <u>Criminal No. 21-452 (S-1)(JS)</u>

Dear Judge Seybert:

    The government respectfully submits this letter in advance of defendant Willie Junior Maxwell II's sentencing, which is currently scheduled for May 24, 2023.  For the reasons set forth below, the government respectfully requests that the Court impose a term of imprisonment within the applicable Guidelines range of 87 – 108 months.

    I.  <u>Facts</u>

    The government's investigation revealed that the defendant participated in a sprawling multi-state narcotics conspiracy that transported significant quantities of controlled substances from the West Coast to the East Coast, which were then resold in the Eastern District of New York ("EDNY") and surrounding areas.  (<u>United States Probation Department, Presentence Investigation Report</u>, dated February 21, 2023, ("PSR") at ¶¶ 3-8).  The defendant's role was that of a large-scale narcotics trafficker.  During the COVID-19 pandemic, the defendant, or others acting on his behalf, drove to Suffolk County on approximately six occasions and purchased kilogram-quantities of cocaine from the organization, which the defendant then resold in New Jersey.  (<u>Id.</u> ¶ 6).  In total, the defendant distributed 25 kilograms of cocaine.  (<u>Id.</u>).

    For this criminal conduct, on September 29, 2021, a grand jury indicted the defendant charging him with conspiring to distribute more than five kilograms of cocaine.  PSR ¶ 1.  On October 29, 2021, the defendant was arrested.  A week later, he was released on bail secured by a home and surrounding suretors.

    Less two months later, on December 11, 2021, the defendant violated the terms of pretrial release by repeatedly threatening to kill another individual, displaying a firearm, and

calling the other individual a rat. (PSR ¶¶ 15). Specifically, John Doe was on a FaceTime call with the defendant, which he recorded. (A copy of the video recording of the FaceTime call and draft transcript are attached hereto as Exhibits 1-2, respectively). During this call, the defendant brandished a gun and pointed it at John Doe. (Id.). The defendant then threatened John Doe, stating "I'm gonna kill you and everybody you with," which he then repeated one more time. (Id.). Throughout the call, the defendant continued to threaten John Doe, saying "I'm gonna kill you," a threat which he repeated several times. (Id.). Additionally, after John Doe called the defendant a rat, the defendant responded by saying, "Your man is a rat." (Id.). After learning of this, the government moved to revoke the defendant's bail on August 2, 2022, which the Court granted. The defendant has been in custody since then.

The defendant subsequently pleaded guilty to conspiracy to distribute 500 grams or more of cocaine. (PSR ¶ 1).

II.     PSR

On February 21, 2023, the United States Probation Department (the "Probation Department" or "Probation") issued the PSR in this case. Probation determined that the defendant's adjusted offense level was 29 and his criminal history category was I, resulting in a Guidelines range of 87 to 108 months. (PSR ¶¶ 17-33, 86). The Probation Department correctly determined that while it is a relevant aggravating factor, the defendant's illegal conduct while on bail (i.e., possessing a firearm, threatening to kill John Doe and calling an individual a rat) did not trigger an obstruction of justice enhancement. (Id. ¶ 15). The parties agree with Probation's Guidelines calculation.

III.    Analysis

As set forth below, analysis of the sentencing considerations set forth by Congress in 18 U.S.C. § 3553(a) requires a substantial prison sentence.

1.   The Nature and Circumstances of the Offense (18 U.S.C. § 3553 (a)(1))

Section 3553(a) requires the Court to consider the "nature and circumstances of the offense" and to impose a sentence that "reflect[s] the seriousness of the offense. 18 U.S.C. §§ 3553(a)(1) and (a)(2)(A). Consideration of those factors suggests that a Guidelines sentence is appropriate.

The defendant participated in a massive drug trafficking organization that flooded Long Island, as well as the surrounding areas, with a tremendous amount of controlled substances. Indeed, the defendant, and others working acting at his direction, travelled to Suffolk County purchased 25 kilograms of cocaine and distributed those narcotics in New Jersey. As the Court knows, drug trafficking ruins communities, feeds addictions, damages lives, and invites violence. The seriousness of the defendant's conduct speaks for itself and deserves a punishment commensurate with that seriousness.

Moreover, the defendant's conduct did not involve a one-time lapse in judgment or a youthful indiscretion. The defendant sold these narcotics over the course of several months.

As such, a sentence of 87 – 108 months appropriately reflects the serious nature of the defendant's crimes.

2.   The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Next, Section 3553 (a)(1) states that the Court must consider the "history and characteristics of the defendant" in imposing a sentence. 18 U.S.C. § 3553 (a)(1). The defendant does not have a lengthy criminal history, having only one prior misdemeanor conviction for reckless endangerment after he was arrested driving his Mercedes Benz recklessly at 105 miles per hour while he was impaired by alcohol. However, this was not the first time that the defendant distributed narcotics. As he admitted in the PSR, he distributed crack cocaine in Patterson, New Jersey before 2014. (PSR ¶ 76). Specifically, he admitted to the Probation Department that his hit song "Trap Queen," which was released in 2014, was an "ode to a former girlfriend who assisted him a cocaine base distribution operation in Patterson, New Jersey." (Id.; a copy of the official video from "Trap Queen" is attached hereto as Exhibit 3). The defendant was never held accountable for that conduct, but that does not diminish its significance. It is germane because the defendant engaged in the exact same criminal conduct as the instant offense, which is an aggravating factor warranting a Guidelines sentence.

Importantly, the defendant's conduct while on bail is also extremely troubling. As set forth above, the defendant repeatedly threatened to kill another individual. He even displayed a firearm during that conversation. The Court should place significant weight on this post-offense conduct as these brazen acts implicate several Section 3553 factors, including the history and characteristics of the defendant and the need to deter him. While none of us is clairvoyant, the defendant's possession of a firearm and threatening conduct while on bail is a concerning predictor of future behavior.

Additionally, unlike many other defendants who are convicted of drug trafficking, this defendant did not act out of financial duress. He had a lucrative career as a rap artist and the ability to make an honest living and provide for himself and his family. Indeed, the defendant told the Probation Department that he made $5 million during his music career. Nevertheless, this defendant chose to supplement his income by trafficking large quantities of drugs - drugs he knew would ruin lives.

Furthermore, another aggravating factor is that the defendant has used, and continues to use, his fame, sizeable platform and influence to glamorize the drug trade. Before his arrest, the defendant became famous singing about his experience cooking crack cocaine, selling drugs and making substantial money from those illegal endeavors. (Exh. 3). In the official video for "Trap Queen", the defendant also enlisted young children who stood behind him while he idealized selling drugs. (Id.). From this and other songs, the defendant's music career has flourished and he has earned millions of dollars. Even after his arrest and while awaiting trial in this very serious federal drug case, the defendant continued to glamorize the drug trade. In November 2022, he released a song entitled "Sweet Yams" where he sang about selling "yams," which is code for grams of narcotics, and making significant money (i.e., "bands") from that illegal trade.

3

3. The Need to Promote Respect for the Law and to Provide Just Punishment for the Offense (18 U.S.C. § 3553 (a)(2)(A))

The Court must also consider the "need for the sentence imposed to promote respect for the law, and to provide for just punishment for the offense." 18 U.S.C. § 3553 (a)(2)(A). A sentence in the range of 87 – 108 months' incarceration will accomplish this while promoting respect for the law and providing just punishment. As set forth above, this is a serious case where the defendant sold large quantities of poisonous, highly addictive drugs. Cases of this nature require custodial sentences. These sentences are among the best ways in which to communicate to the public that they will be protected and that the guilty will be punished.

4. The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Future Crimes of the Defendant (18 U.S.C. §§ 3553 (a)(2)(B), (C))

Sections 3553(a)(2)(B) and (a)(2)(C) further require the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." Id. These factors weigh heavily in favor of a Guidelines sentence. Deterrence has two components: general and specific. Both factors point to the need for the imposition of a significant custodial sentence here.

The instant case has received substantial media attention. Thus, the Court has an opportunity and responsibility to send a clear, unambiguous deterrent message that serious crimes, like those committed here, will be met with significant jail sentences. Long Island and the surrounding areas have been plagued by drug trade for far too long, and we have all seen its effects. Young people who admire the defendant and are considering selling drugs need to be sent a message that selling drugs is not a glamorous lifestyle and, if they participate in that trade, they will receive lengthy prison sentences. That message is even more important in this case, as the defendant has promoted and profited from his drug dealing through his fame and music. If this message is muted, individuals will quickly learn that participating in the lucrative illegal drug trade does not merit significant prison sentences on Long Island.

5. The Need to Afford Unwarranted Sentencing Disparities (18 U.S.C. §§ 3553 (a)(6))

Finally, Section 3553(a)(6) further requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. This factor also requires a sentence of more than 72 months.

On March 3, 2023, the Court sentenced defendant's co-conspirator, Anthony Cyntje to 72 months' imprisonment. Cyntje, a New Jersey Corrections Officer, was a courier for the defendant and his coconspirators and was caught transporting six kilograms of cocaine from Long Island to New Jersey while in possession of his service revolver. These kilograms were destined for the defendant and his coconspirators—Cyntje was not going to resell them. Although Cyntje's conduct was deplorable and his Guideline range was higher than the defendant's—it was 117 – 131 months mainly because Cyntje was convicted of violating both 18 U.S.C. § 924(c) and a 21 U.S.C. § 846—Cyntje was far less culpable and played a significantly lesser role than the defendant. Indeed, Cyntje's role was to deliver the cocaine from Suffolk County to the defendant and his coconspirators in New Jersey where they would sell that cocaine. Also, Cyntje only

participated in the one transaction while the defendant participated in the drug conspiracy for several months.  Furthermore, Cyntje was only responsible for six kilograms while the defendant was responsible for distributing 25 kilograms.  In fact, Cyntje received a minimal role adjustment further demonstrating his lesser role as compared to the defendant.  Accordingly, the Court should impose a sentence for the defendant that is higher than the 72 months imposed on Cyntje.

IV.    Conclusion

           For these reasons, the government respectfully submits that a sentence within the Guidelines range of 87 – 108  months is sufficient, although not greater than necessary to serve the goals of Section 3553 (a).

                                Respectfully submitted,

                                BREON PEACE
                                United States Attorney

                     By:     /s/
                                Christopher Caffarone
                                Andrew P. Wenzel
                                Jacob Kubetz
                                Assistant U.S. Attorneys
                                (631) 715-7890/7832


cc:    Elizabeth Macedonio, Esq. (by email and ECF)
          U.S.P.O. Gregory Giblin by email)
          Clerk of the Court (JS) (by email and ECF)